[Crim. No. 7443. Second Dist., Div. Three. May 23, 1961.]

THE PEOPLE, Respondent, v. ELIJAH NEWMAN, Appellant.

Matthews & Stanley for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, Norman H. Sokolow and Edmond B. Mamer, Deputy Attorneys General, for Respondent.

FORD, J.—An information was filed in which the appellant Elijah Newman and a person named Helen Hendrix were jointly accused of certain offenses. In the first count, a violation of section 337a, subdivision 1, of the Penal Code was alleged. In the second and third counts, respectively, violations of subdivisions 2 and 3 of that section were charged.[1] In

---

[1]Each subdivision of section 337a of the Penal Code describes and constitutes a separate offense. (*People* v. *Cahan*, 126 Cal.App.2d 785, 793-794 [273 P.2d 64].) The offense defined in subdivision 1 is committed by one who "engages in pool-selling or book-making, with or without writing, at any time or place." (*People* v. *Cuda*, 178 Cal.App.2d 397, 412-413 [3 Cal.Rptr. 86].) "Violation of section 337a(2) is committed by '[E]very person (2) Who . . . keeps or occupies . . . any room . . . of any kind, or any part thereof with a book or books, paper or papers, apparatus, device, or paraphernalia, for the purpose of recording or registering any bet or bets.' " (*People* v. *Foreman*, 112 Cal.App. 2d 616, at p. 619 [246 P.2d 979].) "It is the occupancy of the room . . . with betting paraphernalia for the purpose mentioned that consti-

addition, in a fourth count Helen Hendrix alone was accused of a violation of subdivision 5 of section 337a of the Penal Code. At the trial, the appellant and his codefendant each waived the right to trial by jury. It was stipulated that the cause should be submitted on the testimony contained in the transcript of the proceedings had at the preliminary hearing, but with each party having the right to offer additional evidence. The appellant was convicted of the offenses alleged in the first three counts of the information. His codefendant was acquitted of the offenses charged against her.

The present appeal is from the judgment. The appellant states that the sole question raised by him is as follows: "Where two parties are jointly charged and, upon identical evidence, one is convicted and the other acquitted, should the conviction be reversed as being inconsistent and repugnant to the finding of not guilty?" So that the merits of his position may be properly evaluated, the evidence will be summarized.

Charles J. Putnam, a police officer for the city of Los Angeles, testified for the People. It was stipulated that he was an expert "in the ways and means in which bookmaking is commonly conducted in the County of Los Angeles." He saw the defendants on February 3, 1960, at 917 West 51st Street. A single-family residence was located there. The witness entered the residence with a person known to him as Walt. After the officer indicated that he wished to make a bet, the appellant handed him a copy of the National Daily Reporter, "a scratch sheet" which showed "the tracks throughout the country and the horses running at the post positions." The witness and Walt sat down on a divan and discussed "the horses we were going to bet." The officer then asked how he would find out whether he won, whereupon Helen Hendrix said that he could listen to the radio and then come back and pick up his winnings if he did win. He asked her if she had any "indications" as to which horse he should bet; she said that she did not and that she had lost money several days before and did not feel qualified. The officer indicated that he wished to place a bet, whereupon the appellant "accepted a $2 wager on King's Record at the second race in Santa Anita on that day." The officer gave the appellant two one-dollar bills and the appellant made a notation of the bet on a white-

<hr/>

tutes the offense, not the actual making of bets. . . ." (*People* v. *Cahan, supra,* 126 Cal.App.2d 785, 793.) Subdivision 3 makes it an offense to receive, hold or forward money bet on the result of a horse race or purported horse race. (*People* v. *Cuda, supra,* 178 Cal.App.2d 397, 414.)

top table and placed the money in his pocket. King's Record was a horse running at a track that day. Three other persons were present around the table at that time and were discussing "the horses at various tracks."

Joseph K. Ward, a police officer for the city of Los Angeles, also testified for the People. It was stipulated that he was an expert "in the manner and means by which bookmaking is commonly conducted in the County of Los Angeles." He arrested the appellant at 917 West 51st Street at 3:10 p.m. on February 3 after Officer Putnam had related to him substantially the same matters as to which Officer Putnam had given testimony in the case. The witness and Officer Stone entered the premises. The appellant was sitting behind a white-top table at the right of the living room. Helen Hendrix was in the kitchen. The officer testified in part as follows: "Upon entering the location, we also observed on the table where Mr. Newman was seated a copy of the National Daily Reporter, a scratch pad, a pencil; and upon the couch we observed a copy of the Daily Racing Form dated for that day. . . . In my opinion there was a piece of scratch pad with numerous markings on it that I believed to be an owe sheet." The officer answered the telephone when it rang on two occasions. He expressed his opinion that the nature of one of the conversations, when the caller asked for "Ernie," was that of a call "to place wagers upon a horse running in the sixth race at Santa Anita . . . and [upon a horse] in the eighth race at Santa Anita." The documents he described were, in his opinion, betting paraphernalia. The officer had conversations with the appellant and Helen Hendrix at the place of their arrest; each defendant spoke freely and voluntarily. The appellant said he had been at that location for approximately two weeks; he said that he did not know anything about bookmaking and did not write the owe sheets. Helen Hendrix said that the appellant had been there for approximately two weeks; he was her boy friend and she had rented him the telephone but she did not know what he was doing with it; she paid the rent and the telephone bills and the appellant only stayed there.

Helen Hendrix, testifying in her own behalf, said that a man came to her house on February 3, 1960, in the afternoon. He brought a half of a pint of vodka and she had something to drink with him. She told him she had lost some money the day before, but she had lost it at the track to which she had

sent the money by a friend. She was not in the bookmaking business. When asked if she had anybody in the house that was in the bookmaking business, she answered, "Not as I know of." On cross-examination, she said that she was living in the house and that she had a roomer, the appellant. She did not rent the telephone, which was in the house, to the appellant. She did not hear the man who came to the house with Walt say anything about wanting to make a bet and she did not recall any conversation with that man with respect to horses.

The appellant did not testify.

The trial court, upon the submission of the case, found the appellant guilty as charged. While the trial judge stated that he did not believe that Helen Hendrix had told the truth, he stated in substance that he had a doubt as to her guilt. She was acquitted.

The appellant calls the attention of this court to an annotation in 80 American Law Reports 171. Therein, at page 179, it is stated: "Where the inconsistency in a verdict appears only from an examination of the evidence, and constitutes an illogical discrimination between joint defendants, as to which the evidence is identical, it is, according to the majority rule, invalid." He also relies on *People* v. *Angelopoulos,* 30 Cal. App.2d 538, wherein the court said, in part, at pages 549-550 [86 P.2d 873]: "[W]e are unable to reconcile the verdicts. . . . [T]he jury convicted Angelo under the second count, but acquitted those who are alleged to have actually performed the job. . . . It is, therefore, necessary to reverse the judgment against Angelo on the second count. . . ."

The difficulty with the appellant's contention is that the evidence in the present case clearly supported the determination that the appellant was guilty as charged but lent itself to much weaker inferences insofar as the guilt of Helen Hendrix was concerned. ▆▆▆ Accordingly, the applicable law is that stated in *People* v. *Edwards,* 81 Cal.App.2d 655, at page 661 [185 P.2d 74]: "When there is the slightest difference in the evidence as between two persons jointly tried the trier of facts may weigh the evidence and make allowance for such difference, and when that is done and one is acquitted and the other convicted, the fact that the evidence involves the acquitted person to some extent will not require the exoneration of the other. [Citations.]" (See also *People* v. *Shaw,* 115 Cal.App.2d 597, 600 [252 P.2d 670]; *People* v.

*Stembridge,* 99 Cal.App.2d 15, 24-25 [221 P.2d 212]; *People* v. *Wilson,* 8 Cal.App.2d 200, 202 [47 P.2d 349]; *cf. People* v. *Hamilton,* 127 Cal.App.2d 533 [274 P.2d 175].)

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.