Jose RIVERA, a/k/a Aramis Fernandez,
Petitioner-Appellant,

v.

David R. HARRIS, Superintendent, Green Haven Correctional Facility,
Respondent-Appellee.

No. 246, Docket 80–2168.

United States Court of Appeals,
Second Circuit.

Argued Oct. 2, 1980.

Decided Feb. 18, 1981.

Linda Fraser, New York City (Fisher & Fraser, New York City, on brief), for petitioner-appellant.

Clement H. Berne, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen. of the State of New York, George D. Zuckerman, Asst. Sol. Gen., New York City, on brief), for respondent-appellee.

Before OAKES and NEWMAN, Circuit Judges, and COFFRIN,* District Judge.

NEWMAN, Circuit Judge:

This appeal from an unsuccessful habeas corpus challenge to a state court conviction raises interesting issues concerning the constitutionality of inconsistent verdicts rendered by a judge in a multi-defendant criminal trial without a reasoned explanation of the basis for the disparate results. Petitioner-appellant Jose Rivera and two co-defendants, Cynthia Humdy and Earl Robinson, were tried on charges of robbery and related offenses by a Justice of the Supreme Court of the State of New York sitting without a jury. The Court rendered general verdicts acquitting Robinson on all charges but convicting petitioner and Humdy.' Petitioner contends that his conviction offends the Constitution because it cannot rationally be reconciled with Robinson's acquittal. We agree with petitioner that the trial court, in acquitting his co-defendant, appears to have rejected the only evidence that would sustain petitioner's conviction. However, we cannot be certain that this happened and therefore do not reach the question whether the Constitution would prohibit a trial court from rendering verdicts that are inconsistent as between co-defendants. We do conclude, however, that when verdicts in a non-jury trial are facially inconsistent, the Due Process Clause of the Fourteenth Amendment does not permit a conviction to stand unless the trial court demonstrates by appropriate findings that the conviction validly rests on a rational basis.

I.

Petitioner and his two co-defendants were indicted for robbery in the first degree, robbery in the second degree, possession of a dangerous weapon, grand larceny in the third degree, and burglary in the second degree. All the charges were based on an episode alleged to have occurred at the apartment of Milagros Torres on March 26, 1973. The defendants pled not guilty to all charges, waived their rights to a jury trial, and proceeded to trial before a Justice of the Supreme Court.

The prosecution and defense evidence revealed a sharp dispute as to whether any of the alleged crimes had been committed. The State offered evidence to show that the three defendants, acting in concert and armed with a dangerous weapon, forcibly entered Ms. Torres' apartment and robbed her of $540. The defendants offered evidence to show that Torres was not the innocent victim of a robbery committed by three strangers, but that she was in the numbers business and that petitioner, along with the co-defendants, had been admitted to her apartment where petitioner collected his $540 winnings on a numbers bet. In order to consider petitioner's claim that his conviction cannot rationally be reconciled with Robinson's acquittal, the evidence must be examined in some detail.

The only witness for the State who testified concerning the means by which the defendants gained entry to the complainant's apartment and their actions inside the apartment was the complainant herself, Ms. Torres. She testified that on the morning of the day in question she heard noises in the hallway outside her apartment. Looking through the peephole in the door, she saw a woman, identified as defendant Humdy, dressed like a nurse. She asked the woman who she was, and the woman held up a yellow slip of paper and announced that she was investigating a matter concerning a vaccination. Torres opened the door to the extent that the chain lock would permit in order to take the slip of paper. As soon as the door was opened, a man, identified as petitioner Rivera, placed his foot in the opening, brandished a handgun, and told her to open the door. She screamed and tried to close the door but another man, identified as defendant Robinson, forced the door open, breaking the

---

* The Honorable Albert W. Coffrin of the United States District Court for the District of Ver- mont, sitting by designation.

safety chain. Petitioner and Robinson then dragged her to the bedroom, where Robinson handcuffed her and placed tape over her mouth and eyes. Shortly thereafter, she heard a "commotion" in the apartment. Petitioner then removed the handcuffs and tape and warned her "not to accuse them" when the police came into the apartment. At that point, the police entered and, despite the warning, she told them what she claimed had occurred.

Torres' neighbor, Robert Parilla, also testified for the State. He stated that on the morning of the day in question he heard a woman scream. He went to the door of his apartment and attempted to look through the peephole into the hallway, but something had been placed over the opening on the other side of his door. He then peered under his door and saw two pairs of men's shoes. Suspecting that something was wrong, he telephoned the police. The police arrived, and he informed them of what he had heard. The officers knocked on Torres' door, identified themselves, and asked if everything was all right. A woman who sounded like Torres replied from inside the apartment that she was taking a shower. While the officers and Parilla were standing at Torres' door, Torres' friend, Erminda Gonzales, arrived at the apartment and informed the officers that her friend lived inside. One of the officers knocked again and ordered that the door be opened so that he could verify that everything was all right. The woman inside the apartment replied that she could not open the door because she was undressed. When Gonzales heard the woman's reply, Gonzales screamed, "You're not Milagros. You're a mugger." The woman inside the apartment replied that she was Torres' friend. The officers repeated their order to open the door. At that point Parilla returned to his apartment. As he entered, he saw through his window a woman in a nurse's uniform (Humdy) on the fire escape adjoining the two apartments. One of the officers apprehended Humdy and escorted her to the hallway. The door to Torres's apartment then opened, and petitioner and Robinson emerged. As the three intruders were being led away, Parilla overheard one of the men warn Torres not to talk to the officers.

Gonzales and two of the arresting officers provided additional details. All testified that when they first observed Torres inside the apartment, she appeared upset and frightened. Clothing was on the floor, and some furniture had been overturned. The officers did not search the apartment, but they did observe a large amount of cash and several pieces of expensive jewelry in the bathtub, a fully loaded and operable automatic pistol on the living room floor, and two pairs of handcuffs and a key in the bedroom. One of the officers testified that he found $540 in a large roll in Humdy's pocket, which Torres subsequently identified as cash that she had been keeping in her apartment.

The defendants' version of the events was presented by Robinson, the only defense witness. He testified that on the morning of the day in question petitioner visited him at his apartment. Petitioner told him that he was driving downtown to take Humdy, petitioner's wife, to beautician school. Robinson requested a ride to work, and petitioner agreed, but said that he had to make a stop to collect his winnings on a numbers bet. When the three arrived at Torres' apartment, Torres answered the door and asked petitioner what he wanted. Petitioner told her that he had "a hit for Saturday," and Torres told him to come in so that she could "check the work." Torres invited Robinson and Humdy to sit in the living room and went into the kitchen with petitioner. Robinson overheard Torres and petitioner arguing loudly about whether petitioner had a "hit." During the argument there was a knock at the door. Torres asked who was there, and a voice answered, "Police. What's going on in there?" Torres replied, "Nothing," and then ran to the kitchen, grabbed some cash and numbers slips, and ran to the bathroom. Robinson heard the toilet flushing as the police knocked again at the door. Torres went to the door and told the police that she would open it as soon as she was dressed. She

then ran again from the kitchen to the bathroom, where she flushed more numbers slips down the toilet.

After hiding her electric calculator under the bed, Torres ordered Robinson, petitioner, and Humdy to climb out the window to the fire escape. Humdy did so, but Robinson and petitioner refused. Robinson then announced that he was going to open the door and did so. The officers ordered Robinson and petitioner into the hallway, where Humdy already had been taken into custody. Torres told the officers that it was "just an argument among friends," and the officers told the three to leave. As they started to leave, Gonzales emerged from Parilla's apartment and spoke to Torres in Spanish. One of the officers then accompanied Torres and Gonzales into Torres' apartment. Moments later, the officer emerged and ordered the three placed under arrest. Petitioner implored "Millie" (Torres) to tell the officer the truth, but she remained silent. After the three were taken from the building, petitioner and Robinson explained to the officers that Torres was operating a policy parlor and that petitioner had come to the apartment to collect his winnings on a bet.

In their closing arguments all counsel agreed that the outcome of all three cases depended on whether the Court believed Torres or Robinson. The Assistant District Attorney argued that Robinson had told "a story which is merely the evasion of a man that committed a crime, who is trying to avoid the consequences of that act." Counsel for the defendants argued that Torres' version of the incident was cast in doubt by discrepancies in the record. They noted that although the indictment charged the defendants with robbery and related offenses, the original complaint, signed by Torres, had alleged only the far less serious offense of menacing. Torres had testified before the grand jury that she saw petitioner hide the handgun in a living room chair, and it was undisputed that he had ample time after the police arrived to hide any incriminating evidence, yet one of the officers had testified that he discovered the handgun lying in plain view on the living room floor. The officers had testified that they recovered a large amount of cash and jewelry from the bathtub, which they took to the stationhouse and then returned to Torres, yet the only property the officers "vouchered" at the stationhouse was the $540 found in Humdy's pocket. Defense counsel argued that Torres' version was cast in further doubt by the absence of corroborating evidence. Torres had testified that the defendants gained entry to her apartment by breaking the chain lock on the door, yet none of the State's other witnesses recalled any sign of forcible entry. Moreover, although Torres had testified that Robinson placed tape over her mouth and eyes, no tape was found in or around the apartment or in the possession of the defendants.

Finally, defense counsel focused on two points that directly supported Robinson's claim that Torres was in the numbers business. The first point concerned Torres' personal finances. Torres had testified that at the time of the incident she was working as a night supervisor at a laundry, that this was her sole source of income, and that she was earning between $75 and $95 per week, yet she also had testified that she vacationed for three weeks each year in such places as Puerto Rico, South America, and Europe, that she owned a new car, and that she had installed a wall safe in her apartment to protect her valuables. The second point, judicially noticed by the trial court, was that the $540 found in Humdy's pocket equals the winnings on a $1 numbers bet, $600, discounted by the customary 10% runner's fee. Defense counsel argued that this extraordinary coincidence was sufficient to create a reasonable doubt about the defendants' guilt.

The trial judge entered only general findings on each of the charges. All three defendants were found not guilty of robbery in the first degree and not guilty of possession of a dangerous weapon. The trial judge found petitioner and Humdy guilty of robbery in the second degree and

grand larceny in the third degree,[1] but acquitted Robinson on these counts, stating only that he had a reasonable doubt as to Robinson's guilt. Finally, the trial judge found all three not guilty of burglary in the second degree, but found petitioner and Humdy guilty of the lesser included offense of burglary in the third degree.

Prior to sentencing, Humdy moved for judgment notwithstanding the verdicts or for a new trial, contending that the verdicts convicting her and petitioner could not be reconciled with Robinson's acquittal. This motion was summarily denied. Petitioner was then sentenced on the robbery and burglary counts to concurrent terms of imprisonment of five to fifteen years, and seven years, respectively, to be served consecutively to a previously imposed, unrelated federal sentence of five years.

On direct appeal petitioner renewed the argument that the verdicts acquitting Robinson but convicting him were "reversibly inconsistent and irrational." In support of this argument his counsel cited New York case law concerning inconsistent verdicts in criminal cases. In a separate brief filed *pro se*, petitioner argued that he had been "denied of the right to the equal protection of the law and due process when the trial court inexplicably choosed to acquit one of the defendants, who was similarly situated under the same circumstances as appellant and the other co-defendant, and opted to sentence only appellant and the other co-defendant." Petitioner contended that the only possible explanation for the disparity in the verdicts was that the trial judge had been prejudiced against him.

The Appellate Division affirmed without opinion, 57 A.D.2d 737, 393 N.Y.S.2d 630 (1977), and leave to appeal to the Court of

Appeals was denied, 42 N.Y.2d 890, 397 N.Y.S.2d 1035, 366 N.E.2d 887 (1977). Petitioner then filed the instant habeas corpus petition *pro se*, contending, among other things, that his guilt had not been proven beyond a reasonable doubt, and repeating his claim that the inconsistent verdicts were "constitutionally defective." The District Court for the Southern District of New York (Henry F. Werker, Judge) denied the insufficiency claim under the then prevailing "no evidence" standard, *Thompson v. Louisville*, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960), because the trial record contained ample evidence, which, if credited, established petitioner's guilt. The Court then rejected the inconsistency claim on the ground that it was merely a "variation" of the insufficiency claim. We issued a certificate of probable cause allowing petitioner an opportunity to appeal the District Court's judgment.[2]

## II.

Petitioner's argument in this Court that his conviction is "irrationally inconsistent" with his co-defendant's acquittal is based on Judge Friendly's opinion for a divided panel in *United States v. Maybury*, 274 F.2d 899 (2d Cir. 1960). Maybury was indicted for forging the endorsement on a United States Treasury check and for uttering the check knowing that the endorsement had been forged. He was tried before the District Court without a jury. The check in question displayed three endorsements: "Abraham Kroll," the payee; "William Maybury," the defendant; and "William Kozin," the person who had cashed the check. Maybury's defense was that a person known to him as Barney had asked him to endorse the check and that he had done so in the belief that Barney, "who could not write too

---

1. The grand larceny count was dismissed at sentencing as a lesser included count within robbery in the second degree.

2. Petitioner's appeal challenges the District Court's denial of all the claims raised in the petition. The insufficiency of the evidence claim, which is analytically distinct from the inconsistency claim, is without merit, even under the test of *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), because the evidence, viewed in a light most favorable to the State, was sufficient to permit a rational trier of fact to find that the essential elements of the offenses had been proven beyond a reasonable doubt. A claim based on the Interstate Detainers Act is not cognizable in this habeas proceeding. *See Edwards v. United States*, 564 F.2d 652, 653–54 (2d Cir. 1977).

good," was the rightful payee. The District Court acquitted Maybury of forgery but convicted him of uttering the check knowing it to be forged. On appeal Maybury urged that his conviction on the uttering count was inconsistent with his acquittal on the forgery count. The Court agreed that there was "no rational basis on which the trial judge, if not convinced beyond a reasonable doubt that Maybury had forged the endorsement, could be convinced beyond a reasonable doubt that he had uttered or published the check knowing it to be forged." *Id.* at 904. The Court recognized that under *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932), inconsistency in a *jury's* disposition of criminal charges is of no legal significance. It also recognized, however, that the *Dunn* rule rests on considerations relating to the special nature and function of the jury. The value of a jury as a collective voice of the citizenry and the difficulty of securing unanimity have been thought to justify toleration of a jury's acquittal on some counts as an exercise of leniency or even an acquittal on all counts "in the teeth of both the law and the facts," *Horning v. District of Columbia,* 254 U.S. 135, 138, 41 S.Ct. 53, 54, 65 L.Ed. 185 (1920) (Holmes, J.). *See* 274 F.2d at 902–03. These considerations could not justify the disparity in the *Maybury* verdicts because the defendant had been tried by a judge. A judge is not the "voice of the country," and there is no need to permit inconsistency in his disposition of criminal charges so that he can reach unanimity with himself. *Id.* at 903. The Court did not believe that "[it] would enhance respect for the law or for the courts by recognizing for a judge the same right to indulge in 'vagaries' in the disposi-

tion of criminal charges that, for historic reasons, had been granted the jury." *Ibid.* It therefore reversed for inconsistency, "not because of any desire for *elegantia juris,* but because [it could] have no confidence in a judgment convicting Maybury of one crime when the judge, by his acquittal of another, appear[ed] to have rejected the only evidence that would support the conviction." *Id.* at 905.

The *Maybury* rule barring inconsistent verdicts in federal criminal bench trials is well established in this Circuit. *See, e. g., United States v. Wilson,* 342 F.2d 43 (2d Cir. 1965); *United States v. Sells,* 325 F.2d 161 (2d Cir. 1963); *United States v. Zambardi,* 276 F.2d 169 (2d Cir.), *cert. denied,* 364 U.S. 842, 81 S.Ct. 80, 5 L.Ed.2d 66 (1960). To our knowledge, however, this is the first time that a habeas applicant has asked us to overturn a state conviction on the basis of the *Maybury* rule. The State argues that petitioner is not entitled to relief because the trial court's verdicts are in fact not inconsistent and because the *Maybury* rule against inconsistent bench verdicts is not of constitutional dimension. We consider these contentions in turn.[3]

### A.

The State's contention that the verdicts convicting petitioner and acquitting Robinson are not inconsistent rests primarily on the assertion that the evidence in their jointly tried cases was not identical. The State relies on the fact that Robinson testified and petitioner did not. Presumably the State is not relying on any adverse inference from petitioner's failure to testify, and there is no explicit claim that Robinson's testimony at the joint trial was not

---

**3.** The State argues that petitioner is not entitled to relief for the further reason that he has failed to exhaust his state remedies. The State asserts that the inconsistency claim petitioner presented to the state courts was based solely on New York case law. As noted in the text, however, the record of the proceedings before the Appellate Division shows that, although petitioner's counsel may have relied in his brief solely on New York case law, petitioner's *pro*

*se* brief expressly invoked the Due Process and Equal Protection Clauses of the Fourteenth Amendment. We know of no New York procedural rule that would have entitled the Appellate Division to disregard petitioner's *pro se* submission, and, so far as we can tell, that submission was accepted and made a part of the record on appeal. Accordingly, we have no difficulty concluding that the exhaustion requirement has been fully satisfied.

admissible in petitioner's case.[4] The State's point appears to be that the *credible* evidence against each defendant was not identical, on the theory that Torres' testimony could have been found credible only to the extent that she implicated petitioner and Humdy, and that Robinson's testimony could have been found credible only to the extent that he denied his own guilt.

We begin our assessment of whether the verdicts are inconsistent by considering the appropriate test of inconsistency. Several courts, when considering challenges to allegedly inconsistent verdicts rendered by juries, have applied the test of identical evidence, and rejected challenges when the test was not precisely met. *See, e. g., People v. Taylor*, 25 Ill.App.3d 396, 323 N.E.2d 388 (1974) (if there is any difference in the evidence, acquittal of one defendant not a ground for reversal of the conviction of the other); *People v. Newman*, 192 Cal.App.2d 420, 13 Cal.Rptr. 305 (1961) (although inconsistent verdicts rendered on the basis of identical evidence requires reversal of conviction, slightest difference in the evidence permits appellate court to affirm); *People v. Scheppa*, 295 N.Y. 359, 67 N.E.2d 581 (1946) (since the evidence against jointly-tried defendants was not identical, unnecessary to consider legal effect of a verdict that illogically discriminates between defendants as to whom the proofs were identical).

Strict adherence to the "identical evidence" test may be appropriate in considering a challenge to inconsistent *jury* verdicts because those verdicts represent the collective deliberative process of twelve individuals. The requirement of unanimity with respect to verdicts does not mean that all twelve jurors must be unanimous in their appraisal of each item of evidence. More-over, the sanctity of the jurors' deliberative process would be imperiled by requiring explanation of each juror's individual decision-making. In light of these facts, it may be tolerable to accept jury verdicts that are facially inconsistent so long as the proofs against the defendants differ in any respect. The difference affords some basis for confidence in the verdicts, even though we remain unenlightened as to how each juror analyzed all the evidence in reaching seemingly inconsistent results.

■ Whatever the merit of that approach, it is not justified when facially inconsistent verdicts are returned by a trial judge. The single trier obviously applies a single analysis to each item of evidence, and if his analysis is irrationally inconsistent between two defendants, the convicted defendant has a substantial basis for contending that his verdict is improper. Moreover, no values are served by foreclosing inquiry into the reasoning of a single trier of fact. Disclosure of the judge's reasoning can be expected to make clear whether the facially inconsistent verdicts are the product of some plausible explanation, or whether, because of faulty analysis, mistake, or reliance on some impermissible factor, the inconsistency may not validly stand.

We think it was these considerations that prompted this Court in *Maybury* and subsequent cases to eschew the identical evidence test of inconsistency and inquire not simply whether there was *any* difference between the evidence against the defendants whose verdicts appeared to be inconsistent, but whether, as stated in *Maybury*, the verdicts could be explained on any "rational basis." 274 F.2d at 904. In the first case that followed *Maybury* it was stated that "*Maybury* requires reversal when there is an

---

4. In *United States v. Kahn*, 366 F.2d 259 (2d Cir.) *cert. denied*, 365 U.S. 948, 87 S.Ct. 321, 17 L.Ed.2d 226 (1966), the defendant contended that because he had rested and moved for acquittal at the close of the Government's case, the jury should have been instructed to consider as evidence against him only the evidence introduced by the Government in its direct case and not the subsequent testimony of his co-defendants. The Court rejected this argument, stating that it could see no reason why the jury should not have been free to consider the co-defendants' testimony. *Id.* at 263. We think it follows *a fortiori* that if a defendant in a joint trial is not entitled to have a co-defendant's testimony excluded from his case when it is inculpatory, he is entitled to have the benefit of it when it is exculpatory. The prosecution elected to have a joint trial of all three defendants.

inconsistent appraisal of the evidence necessary to sustain the count on which the defendant has been convicted." *United States v. Zambardi, supra,* 276 F.2d at 171 (Waterman, J., concurring). Applying *Maybury* in *United States v. Sells, supra,* the Court, in declining to reverse for inconsistency, noted that the evidence underlying the disparate verdicts was not identical. 325 F.2d at 162. But *Sells* did not rely simply on the existence of some difference in the proofs; instead, the Court, in keeping with the "rational basis" test, affirmed because the difference in the proofs against the defendants was sufficient "to justify the difference in result." *Id.* at 162. Our most recent formulation of *Maybury* requires a determination that the verdicts are not "wholly irreconcilable with any rational theory." *United States v. Rosengarten,* 357 F.2d 263, 267 (2d Cir. 1966), *quoting United States v. Wilson, supra,* 342 F.2d at 45. We continue to believe that a rational basis test is the appropriate test of inconsistency when assessing verdicts rendered by a trial judge.

■ We therefore proceed to consider the State's contention that the evidence the trial judge may have credited with respect to Robinson and petitioner was not only different in some respects, but that the difference supplies a rational basis for explaining the verdicts. After examining the record in detail, we are unable to discern any plausible basis on which the trier might have credited only portions of Torres' and Robinson's testimony that would rationally explain the verdicts. Robinson figured as prominently in Torres' version of the incident as petitioner and Humdy; if anything, his conduct was the most aggressive. According to Torres, it was Robinson who forced open the door and enabled the defendants to gain entry to her apartment, and it was Robinson who handcuffed her and placed tape over her mouth and eyes. In accusing all three defendants, Torres was not any less certain of Robinson's role than that of the others, and there is not even a hint in the evidence that she had a motive to give false testimony only against Robinson. Similarly, in exonerating all three defendants, Robinson did not give a version of his role that endeavored to deny only *his* participation in criminal conduct or only *his* knowledge or criminal intent. His testimony was that all three defendants went to the apartment to collect petitioner's gambling winnings and that the crimes charged in the indictment were not committed: As all counsel recognized in their closing arguments, it was a matter of Torres' word against Robinson's. If Torres was telling the truth, all three were guilty. If Robinson was telling the truth, all three were not guilty.

The apparent illogic of petitioner's conviction and Robinson's acquittal is further illuminated by considering the elements of the offenses for which petitioner stands convicted. The offense of robbery in the second degree requires a forcible stealing. N.Y. Penal Law § 160.10 (McKinney 1975). A person forcibly steals property when, in the course of committing a larceny, he uses or threatens the immediate use of physical force. N.Y. Penal Law § 160.00 (McKinney 1975). *The only evidence of physical force was Torres' testimony that petitioner threatened her with a gun and that petitioner and Robinson then dragged her to the bedroom, where Robinson handcuffed her and placed tape over her mouth and eyes. She did not allege that any verbal threats were used. Petitioner's acquittal on the gun charge rejected Torres' testimony concerning the gun as a possible basis for a finding of forcible stealing, and Robinson's acquittal on all charges appears to constitute an implicit rejection by the trial court of Torres' testimony that the defendants used physical force. A person is guilty of burglary in the third degree when he knowingly enters or remains in a building unlawfully with intent to commit a crime. N.Y. Penal Law § 140.20 (McKinney 1975). An entry is unlawful if it is accomplished without license or privilege. *People v. Ennis,* 37 A.D.2d 573, 322 N.Y.S.2d 341, *aff'd,* 30 N.Y.S.2d 535, 330 N.Y.S.2d 384 (1971). The only evidence of unlawful entry was Torres' testimony that petitioner ordered her at gunpoint to open the door and that Robin-

son forced the door open. Here again, petitioner's acquittal on the gun count eliminates the former as a possible basis for a finding of unlawful entry, and the latter appears to be negated by Robinson's acquittal.

We therefore conclude that petitioner's conviction is at least facially inconsistent with Robinson's acquittal. The verdicts appear to be inconsistent because the record discloses no rational basis on which the trial court, if not convinced beyond a reasonable doubt that Robinson was guilty, could have been convinced beyond a reasonable doubt that petitioner was guilty. We therefore turn to the issue of whether this unexplained inconsistency warrants relief under the Constitution.

### B.

Petitioner's essential constitutional claim is that his liberty has been denied in violation of the Due Process Clause because his conviction, considered in light of Robinson's acquittal, does not rest on any rational basis.[5] Prior decisions do not provide a ready answer to this claim. The rule of *Dunn v. United States, supra,* rejecting challenges to inconsistent jury verdicts, does not determine the validity of a similar challenge to inconsistent verdicts rendered by a trial judge, as we noted in *Maybury.* But in prohibiting inconsistent bench trial verdicts, *Maybury* does not purport to rest on any

provision of the Constitution and may well have been decided solely in the exercise of the Court's supervisory power over the administration of criminal justice within this Circuit. Several state court decisions have reversed inconsistent verdicts rendered by judges,[6] and New York courts have reversed inconsistent jury verdicts,[7] but none of these cases relies on standards of the Constitution.[8]

In our view the due process issue in this case has two components: the inconsistent verdicts and the absence of a reasoned explanation for the disparate results. The ultimate issue is whether a verdict of guilty offends the Due Process Clause when it is facially inconsistent with an acquittal rendered in a joint bench trial of multiple defendants. The answer to that question may well turn on the circumstance that prompted the differing verdicts. For example, it is possible that the trier noted some basis in the evidence concerning the alleged crimes, not apparent to those reviewing his bare conclusions, that affords a rational basis for reaching what seem to be inconsistent results. On the other hand, the explanation may lie not in analysis of the evidence about the crimes, but in some other aspect of the case that is arguably or perhaps clearly insufficient to justify the conviction. For example, if a trier were to convict one defendant because he did not

---

5. Petitioner also claims that his conviction denied him the equal protection of the laws. However, he makes no claim that he was convicted because of his membership in any identifiable class. The only validity to his equal protection claim would arise from a determination that his conviction is irrationally inconsistent with the acquittal of his co-defendant. That is the essence of his due process claim, which we examine in detail.

6. *See, e. g., People v. Beasley,* 41 Ill.App.3d 550, 353 N.E.2d 699 (1976); *People v. Ethridge,* 131 Ill.App.2d 351, 268 N.E.2d 260 (1971); *People v. Griffin,* 88 Ill.App.2d 28, 232 N.E.2d 216 (1967). *See also Johnson v. State,* 238 Md. 528, 209 A.2d 765 (1965) (recognizing *Maybury* rule).

7. *See People v. Munroe,* 190 N.Y. 435, 83 N.E. 476 (1908); *People v. Kramer,* 70 A.D.2d 888, 417 N.Y.S.2d 97 (1979); *People v. Greenfield,* 70 A.D.2d 662, 416 N.Y.S.2d 830 (1979); *People*

*v. Safe-Way Coal Co.,* 242 A.D. 659, 272 N.Y.S. 658 (1934); *People v. Massett,* 55 Hun. 606, 7 N.Y.S. 839 (1889). A substantial number of courts have declined to follow the *Dunn* rule. *See* cases cited in Annotation, *Inconsistency of Criminal Verdicts as Between Two or More Defendants Tried Together,* 22 ALR 3d 717, 725 (1968); Annotation, *Inconsistency of Criminal Verdicts as Between Different Counts of Indictment or Information,* 18 ALR 3d 259, 281 (1968); Comment, 60 Col.L.Rev. 999, 1002–04 (1960).

8. The only case we have been able to find that expressly suggests that inconsistent verdicts might violate the Constitution is *People v. Scheppa, supra,* and the Court in that case expressly declined to rule on the issue because it found that the jury verdicts were not inconsistent.

testify or because of some adverse fact known to the trier but not included in the evidence, constitutional infirmity would be apparent. A violation of fundamental fairness would be less certain, though the defendant would have a plausible basis for complaint, if the trier concluded that both defendants had committed the crimes charged, but declined to convict one of them in an exercise of clemency. While sympathy for an accused, even though arising from the evidence, is not a proper basis for an acquittal,[9] it is not certain that such an acquittal renders unconstitutional the conviction of a jointly tried co-defendant where the evidence of the criminal participation of both defendants is not significantly different.[10] The range of circumstances that might explain facially inconsistent verdicts, whether validly or invalidly, prompts us to confine our attention at this point to the preliminary due process issue raised by the trial judge's failure to articulate the basis for the verdicts he rendered.

The Supreme Court has recognized that the fundamental due process guarantee of a right to be heard may be impaired unless the decision-maker is required to state the reasons for his decision. *Goldberg v. Kelly,* 397 U.S. 254, 267, 271, 90 S.Ct. 1011, 1020, 1022, 25 L.Ed.2d 287 (1970). The requirement of an explanation contributes to accuracy and fairness by promoting consideration of all the relevant factors and by enabling the parties and reviewing courts to ensure that no error has occurred. *See, e. g., Wolff v. McDonnell,* 418 U.S. 539, 565, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974); *Dorzynski v. United States,* 418 U.S. 424, 455–56, 94 S.Ct. 3042, 3058, 41 L.Ed.2d 855 (1974) (Marshall, J., concurring in the judgment). "A Sphinxlike silence," on the other hand, "precludes anyone from knowing

whether [the decision-maker] acted in error." *United States v. Brown,* 479 F.2d 1170, 1173 (2d Cir.1973).

Rule 23(c) of the Federal Rules of Criminal Procedure requires a federal judge, upon request, to make findings of fact in a non-jury criminal trial, and we have repeatedly emphasized the desirability of special findings, even in the absence of a timely request. *United States v. Rivera,* 444 F.2d 136, 138 (2d Cir.1971); *United States v. Jones,* 360 F.2d 92, 96 (2d Cir.1966), *cert. denied,* 385 U.S. 1012, 87 S.Ct. 721, 17 L.Ed.2d 549 (1967); *United States v. Rosengarten, supra,* 357 F.2d at 266 n.4. The importance of findings as an aid to appellate review, *see United States v. Johnson,* 496 F.2d 1131, 1137 (5th Cir.1974), *cert. denied,* 420 U.S. 972, 95 S.Ct. 1391, 43 L.Ed.2d 651 (1975); *United States v. Brown,* 479 F.2d 1170, 1173 (2d Cir.1973); *United States v. Livingston,* 459 F.2d 797, 798 (3d Cir.1972) (*en banc*), has prompted several courts of appeals to require findings on specific issues in order to determine whether a conviction was validly obtained. *E.g., United States v. Conners,* 606 F.2d 269 (10th Cir.1979); *United States v. Pinner,* 561 F.2d 1203 (5th Cir.1977). *Cf. Mladinich v. United States,* 371 F.2d 940 (5th Cir. 1967).

The importance of findings as a procedural safeguard for minimizing error and reducing the danger of arbitrary action has also been widely recognized in non-criminal proceedings where less is at stake. Rule 52(a) of the Federal Rules of Civil Procedure requires findings of fact in all civil cases tried without a jury, and similar requirements have been adopted by statute in most states,[11] including New York.[12] Moreover, it has been held with increasing frequency that due process requires govern-

---

9. The exercise of lenity in the determination of guilt or innocence is no more proper for a judge than it is for a jury. *United States v. Maybury,* 274 F.2d 899, 902–03 (2d Cir.1960). *See generally United States v. Dougherty,* 473 F.2d 1113, 1130 (D.C.Cir.1972).

10. *See United States v. Maybury, supra,* 274 F.2d at 908 (Hand, J., dissenting). *Cf. United States v. Reginelli,* 133 F.2d 595, 597 (3d Cir.)

*cert. denied,* 318 U.S. 783, 63 S.Ct. 856, 87 L.Ed. 1150 (1943); *People v. Smith,* 117 Cal. App. 530, 4 P.2d 268 (1931).

11. *See* Advisory Committee Note to Fed.R. Civ.P. 52 (collecting state statutes).

12. N.Y. Civil Practice Law and Rules § 4213 (McKinney 1975).

ment officials to provide an explanation for a wide range of adverse administrative actions.[13]

Despite these developments, we can find no case holding that special findings in a criminal case are constitutionally required, and the implicit premise of our suggestions to district judges that they make special findings even when not requested by defendants is that such findings are not constitutionally required, an anomaly explicitly noted by Judge Friendly in *United States v. Rosengarten, supra.* *Cf. Arizona v. Washington*, 434 U.S. 497, 516–17, 98 S.Ct. 824, 835, 54 L.Ed.2d 717 (1978) (lack of explanation for mistrial order does not render it constitutionally defective if likely basis inferable from record). Because more is at stake in a criminal trial than in many of the proceedings in which an explanation by the decision-maker is now required, the lack of such a requirement for bench trial convictions resulting in prison terms remains as anomalous as Judge Friendly considered it in *Rosengarten.* However, we need not in this case pursue the broad inquiry whether reasons are required in the general run of criminal bench trials. The issue here is whether an explanation is required in the rare case where bench trial verdicts are facially inconsistent.

In considering this narrow issue, we find a very helpful analogy in the Supreme Court's resolution of the question whether upon a retrial following a successful appeal, a more severe sentence may be imposed than the one imposed after the initial trial. In *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the Court concluded that such situations pose a distinct risk that the more severe sentence may have been improperly motivated by a desire to deter the exercise of appellate rights. The Court ruled that the only valid reason for enhanced sentencing would be conduct of the defendant occurring after the initial sentencing. Then, significantly to our case, the Court ruled that, even though the Constitution normally does not require sentences to be explained, *Williams v. Oklahoma*, 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959); *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), the reasons for enhanced sentencing upon retrial must "affirmatively appear." *Id.* at 726, 89 S.Ct. at 2081. Petitioner's case is similar to *Pearce* in that it involves action by a state judge that may well be invalid, yet might be shown to be valid if adequately explained.[14] We think due process requires an explanation for such action.

Our conclusion is confirmed by application of the prevailing test of due process

---

**13.** *See Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (prison discipline); *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (probation revocation); *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972) (parole revocation); *Goldberg v. Kelly*, 397 U.S. 254, 271, 90 S.Ct. 1011, 1022, 25 L.Ed.2d 287 (1970) (welfare benefits); *Dumschat v. Board of Pardons*, 618 F.2d 216 (2d Cir.), *cert. granted,* —— U.S. ——, 101 S.Ct. 266, 66 L.Ed.2d 127 (1980) (pardon process); *Johnson v. Board of Parole*, 500 F.2d 925, 934 (1974), *vacated and remanded as moot sub nom. Regan v. Johnson*, 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974) (parole release).

**14.** There is a latent ambiguity in the Court's opinion in *Pearce*, which merits some consideration. The rule that the Court announced for future case requires the judge imposing the more severe sentence after retrial to state his own reasons on the record. The "factual data" on which the increased sentence is based must be part of the record, and the "reasons" for the judge's imposition of the increased sentence

must "affirmatively appear." 395 U.S. at 726, 89 S.Ct. at 2081. These two requirements preclude simply inferring from the factual data what the reasons might have been. However, in affirming the decision of the federal habeas judge who had invalidated the increased sentence imposed on Pearce, the Court noted that "the State" had not "offered any reason or justification" for the increased sentence, 395 U.S. at 726, 89 S.Ct. at 2081, suggesting that, at least in Pearce's case, the *State's* articulation of a valid reason for the sentence might have sufficed, without the assurance that the proffered reason was actually entertained by the sentencing judge. To whatever extent the opinion pursues both these approaches, we think it clear that the prospective rule, requiring the sentencing judge to give his reason for the more severe sentence, is the core of the Court's decision. In any event, in this case we have considered the State's proffered explanations for the facially inconsistent verdicts and found them unpersuasive.

requirements. The test requires considerations of three factors: (1) the private interest involved; (2) the risk of an erroneous deprivation of that interest under existing procedures, and the probable value of additional safeguards; and (3) the government's interest in maintaining the existing procedures. *See Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). Petitioner's liberty interest obviously is among the fundamental interests protected by the Due Process Clause. In the absence of an explanation for the trial judge's verdicts, there is an unacceptable risk that petitioner may have been convicted on some basis that lacks validity, and a requirement of appropriate findings will dispel any uncertainty about whether the conviction is valid. Findings are as needed here to explain the conviction as they were in *Pearce* to explain the sentence. Finally, we can think of no state interest that would be significantly impaired by a requirement of a reasoned explanation in this setting. Any objection concerning additional time and expense is insubstantial. The trial court's burden of explaining the basis of facially inconsistent verdicts will arise only infrequently and will be less burdensome than litigation aimed at determining what was in the trial court's mind. *See Arizona v. Washington, supra*, 434 U.S. at 516–17, 98 S.Ct. at 835 (Marshall, J., and Brennan, J., dissenting).

■  Considering the need for and the benefit of a reasoned explanation by the trial court in this case and the trifling burden that such a requirement would entail, failure to insist on an explanation could be justified, if at all, only by considerations of federalism and comity. The co-equal responsibilities of state and federal courts in the administration of federal constitutional law are such that a federal court ordinarily assumes that a state conviction rests upon correct fact-finding, 28 U.S.C. § 2254(d),

and correct application of law to the facts. *Townsend v. Sain*, 372 U.S. 293, 314–15, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963). This presumption of regularity is overcome, however, when there is reason to believe that the conviction is improper.[15] *Ibid.* In that event the federal court may independently examine the record to determine whether the unexplained action of the state court comports with the Constitution, sustaining it if it does, as in *Arizona v. Washington, supra*, or vacating it if it does not, as in *North Carolina v. Pearce, supra*, or affording the state court an opportunity to demonstrate the validity of its action, as in *Sigler v. Parker*, 396 U.S. 482, 90 S.Ct. 667, 24 L.Ed.2d 672 (1970); *Jackson v. Denno*, 378 U.S. 368, 391–93, 84 S.Ct. 1774, 1788, 12 L.Ed.2d 908 (1964); and *Patterson v. Lockhart*, 513 F.2d 579 (8th Cir. 1975).

We conclude that this last approach is appropriate in this case, primarily because the verdicts, though facially inconsistent, may yet be susceptible to a rational explanation. If the trial court is able to demonstrate that the verdicts are not irrationally inconsistent, the ultimate issue of whether an inconsistent conviction offends the Due Process Clause need not be faced. In the circumstances presented by this unusual case, a "remand" to the state court is the preferable course. *See Sigler v. Parker, supra.*

For the foregoing reasons we reverse the District Court's judgment and remand with directions to enter an order conditionally vacating petitioner's conviction and awarding him a new trial unless the state trial court demonstrates by appropriate findings rendered within ninety days that petitioner's conviction is valid. If the state trial court makes findings purporting to demonstrate the validity of the conviction, petitioner may return to the District Court and renew his habeas corpus challenge to his

---

**15.** To the extent that the Supreme Court's recent decision in *Sumner v. Mata*, —— U.S. ——, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), would require a federal court in a case such as this to identify a subsection of 28 U.S.C.

§ 2254(d) that permits a grant of relief, we note that our holding that the trial court's failure to explain the basis for its disparate verdicts denied the petitioner due process of law is plainly within the scope of subsection (7).

conviction.[16]  At that point, the issue will be whether the state court conviction, considered in light of the acquittal of petitioner's co-defendant and in light of the state trial court's findings, denies petitioner his liberty without due process of law.  At this point, we hold only that facially inconsistent verdicts as to two defendants, rendered in a state court non-jury trial, deny the convicted defendant due process of law in the absence of any explanation for the apparent inconsistency.

**16.**  If the state trial judge is able to furnish findings purporting to account for the facial inconsistency between the verdicts, the state courts will not have had an opportunity to determine the validity of the proffered explanation.  As a result, it could be argued that the exhaustion requirement of 28 U.S.C. § 2254(d) would then have to be met before any further challenge.  However, the petitioner has presented to the state courts his basic contention that the facial inconsistency between his conviction and Robinson's acquittal denies him his liberty without due process of law.  Having afforded the state courts an opportunity to consider that claim, petitioner need not pursue state court remedies a second time, simply because the trial judge supplies findings to explain the apparent inconsistency.  Of course, petitioner is not precluded from seeking state court relief after the findings have been made, particularly if he determines that these findings reveal a defect cognizable under state, but not federal, law.