**STATE**

v.

**Craig DiPETRILLO.**

No. 2005–88–C.A.

Supreme Court of Rhode Island.

May 17, 2007.

Aaron L. Weisman, Esq., Providence, for Plaintiff.

John A. MacFadyen, III, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., and GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on October 3, 2006, on appeal of the defendant, Craig DiPetrillo (DiPetrillo or defendant), from a Superior Court judgment of conviction of first-degree sexual assault, digital penetration, and second-degree sexual assault, breast contact. The defendant was found guilty on both counts in a jury-waived trial and was sentenced to twenty years at the Adult Correctional Institutions, with six years to serve, on the first-degree sexual assault charge and a concurrent term of ten years, with two years to serve, on the second-degree sexual assault charge. The defendant moved for a new trial based on newly discovered evidence. After an evidentiary hearing, the trial justice denied the new trial motion and this appeal ensued.

Before the Supreme Court, defendant assigns two errors of law: (1) the trial justice erroneously defined the elements of first-and second-degree sexual assault as it applied to the evidence adduced at trial; and (2) the trial justice erred in denying defendant's motion for a new trial. The defendant requests that the convictions be vacated and that the case be remanded to the Superior Court for a new trial. For the reasons stated in this opinion, we affirm in part and vacate in part and remand the case to the Superior Court for additional findings, based on the record, and the entry of a new judgment in accordance with this opinion.

### Facts and Travel

The incident that gave rise to these convictions occurred in the early evening of March 20, 2002. The facts leading up to the alleged assault and the events of the evening in question largely are not in dispute.

The complainant, whom we shall refer to as Jane, was nineteen years old when she began working for DiPetrillo as a draftsperson at his North Providence business, Aeriel Designs. At that time, Jane was studying architectural building and engineering at the New England Institute of Technology (New England Tech). She was hired by DiPetrillo, then thirty years old, as a draftsperson to work on projects

for both commercial and residential clientele.

On Wednesday, March 20, 2002, DiPetrillo asked Jane to work late, purportedly to assist in setting up a design library in the company's basement. Because other employees had stayed late to pitch in the week before, Jane felt obliged to forgo her evening class at New England Tech so that she could stay and help defendant. The work day ended at 4:30 p.m., but rather than begin work on the project immediately, DiPetrillo suggested that he and Jane run some "errands" first. DiPetrillo then drove the two of them to a Chinese restaurant to pick up takeout food, then to a liquor store to buy a twelve-pack of beer, and finally to his house, where defendant changed his clothes. The pair returned to the office at 5:30 p.m. and consumed the food, and two beers each, before commencing work around 6:15 p.m.

The defendant offered Jane another beer, which she consumed, and he then asked her to come into his office to sort magazines. DiPetrillo offered her a fourth beer, which she drank while defendant sat behind his desk. DiPetrillo then asked Jane to come over to his desk. When she did so, he grabbed her by the wrist, pulled her onto his lap, and began kissing her. According to Jane, she initially did not react and she kissed him back. But then she protested, telling DiPetrillo "we can't do this" and that he was her boss. According to Jane's testimony, DiPetrillo physically moved her from his lap onto the seat of the chair. With his hands placed on each of the chair's arms, he stood over her and continued kissing her; he also put his hand under her shirt and touched her breast.

At trial, Jane testified that at this point she was in fear, tried to avoid the kissing by moving her face away, and repeatedly told defendant to "stop it; he was my boss, we couldn't do this." She also tried to stop him from touching her breast by telling him several times "no, we ha[ve] to stop" and then pushing his hand away. This resistance was unavailing. DiPetrillo continued his assault by pulling Jane's pants and underwear down to her knees and then digitally penetrating her vagina with one of the fingers of his right hand for approximately a minute. Scared and in shock, Jane again told DiPetrillo "we have to stop;" she stood up, restored her clothing, and attempted to walk away. The defendant grabbed her around the waist, and forcibly held her there while he masturbated, spilling some of his ejaculation on her stomach. Although Jane tried to push him away, he would not release her until he had finished masturbating.

Jane then walked away, stopped in the bathroom to clean up, and then carried a box of magazines to the basement. According to Jane, "Mr. DiPetrillo [then] came downstairs to the basement [ ] to see what [I was] doing, and I told him I was done, I was going to get going, and he pushed me up against and he kissed me." The defendant then said, "we shouldn't tell anybody about what happened." At approximately 7:30 p.m., Jane left the building.

The next day, defendant had Jane bring him lunch and repeated that "[they] shouldn't tell anybody about what had happened." Later that day, in the context of expressing her discomfort about traveling with DiPetrillo on an upcoming business trip, Jane confided in a supervisor and disclosed the events of the previous evening.

Later that night, Jane also spoke to a former employer about the assault. She then spoke with a Woonsocket police officer, who put her in contact with North Providence police. The following Monday,

Jane called in sick and gave a statement to the North Providence police. She quit her job the next day. In due course, a grand jury returned a two-count indictment against defendant.

The defense was consent. DiPetrillo testified at trial and essentially recounted the same series of events, but insisted that he had also performed cunnilingus on Jane, who, he said, was a willing participant. Indeed, at the close of the evidence, the trial justice and defense counsel engaged in the following colloquy:

"The Court: The only issue is whether or not these alleged—well, not alleged, there were sexual encounters, as has been described, as has been indicated by the defendant himself on the stand. The only issue is whether or not [the s]tate can prevail on its claim that these sexual encounters occurred as a result of force and coercion?

"[Defense Counsel]: That is correct, Your Honor.

"The Court: As opposed to your claim, that is to say, your client's claim whatever sexual encounter occurred was consensual?

"[Defense Counsel]: Exactly."

Significantly, at no point did defendant challenge the sufficiency of the evidence, either during trial, or in posttrial motions. Nor did defendant request specific findings by the trial justice based on Rule 23(c) of the Superior Court Rules of Criminal Procedure.[1]

On September 18, 2003, after a four-day trial, the trial justice issued a bench decision and found defendant guilty on both counts. He declared that "[h]aving consid-

ered all of the evidence presented, I am well satisfied beyond a reasonable doubt that the defendant is guilty as charged of both counts in the indictment, and a verdict of guilt shall be recorded as to those two charges." The trial justice noted that the sexual activity alleged in the charges against defendant was not contested; what was in dispute was whether the activity was "procured by force or coercion" or was consensual, as defendant claimed.

In light of the issues raised on appeal, we shall set forth that portion of the trial justice's decision that pertains to the elements of force or coercion. The trial justice held as follows:

"Generally speaking, force or coercion means overcoming the victim of sexual assault through the application of physical force or violence, against her will, and without her consent.

"It also includes compelling the victim to submit by threatening to use force or violence, and the victim reasonably believed that the defendant had the present ability to carry out such threats. The [s]tate need not prove that a defendant actually, or by words spoken, expressly threatened his victim, because a threat may be implied as well as express. In other words, the victim need not have actually heard any threatening words in order for her to have reasonably been in fear of her assailant.

"Force or coercion may also consist of the imposition of psychological pressure upon a person who, under all of the circumstances, is vulnerable and susceptible to such pressure.

"The law recognizes that a command by someone who has a position of au-

---

1. The text of Rule 23(c) of the Superior Court Rules of Criminal Procedure reads:

   "Trial Without a Jury: In a case tried without a jury the court shall make a general finding and shall in addition on request find the facts specially and state separately its conclusions of law thereon. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein."

thority, and who is forcibly able to back up that authority, need not be accompanied by an explicit threat in order for such a command to be effectively and inherently coercive.

"One must also bear in mind that in the prosecution of criminal sex offenses the law expressly holds that the testimony of the victim need not be corroborated. In other words, the testimony of [Jane], if credible, is sufficient by itself to support a finding of guilt. No additional confirming or supplementary evidence is required.

"In this case, the defendant contends [Jane] consented to the sexual conduct and that it was not forced upon her. The defendant does not have the burden of proving the defense of consent. If, however, a defendant raises such a defense, it is the [s]tate's burden to negate it beyond a reasonable doubt. In other words, the [s]tate must prove that the sexual activity occurred, not as a result of [Jane's] consent, but as a result of the defendant's force or coercion."

The trial justice, having spread upon the record the elements of force and coercion, then found that the evidence satisfied two distinct categories of force and coercion:

"In short, all of the ingredients were present on the evening of March 20th for the defendant to overbear the will of this diminutive and attractive young girl, either by the very authority that he represented, or by a modicum of physical force. As it turned out, and as I so find from the credible evidence before me, both of those circumstances occurred.

"* * *

"So, too, I credit her testimony that, apart from a single kiss at the outset, she did not want the defendant to continue his advances. She said that the defendant grabbed her wrist and brought her to his lap, that he continued to try to kiss her, and that she told him not to, that she moved her head in an effort to avoid his efforts to kiss her mouth, and that she kept telling * * * him it was wrong, that he was her boss, and that she had a boyfriend. She pushed at his chest and tried, to no avail, to push away from his grasp around her waist while he masturbated. Indeed, at one point she described how the defendant hovered over her as she sat trapped and fearful in his chair, with both of his hands on each arm of the chair.

"I find from the credible evidence that all of the relevant hallmarks of force or coercion that I outlined earlier, both physical as well as psychological, were part and parcel of the defendant's misconduct.

"* * *

"[W]hat occurred in that office was disagreeable, unwanted, and she tried reasonably, but unsuccessfully, to avoid what finally occurred. She was unable to avoid it because the defendant overcame her will by force and coercion."

Finally, the trial justice addressed the credibility of the witnesses. He found Jane and the supervisor, who testified on behalf of the state, to be "trustworthy witnesses, especially when juxtaposed to the defendant, whose testimony is without credibility." The trial justice found that Jane's testimony in particular was "unembellished and unvarnished, and, in a word, credible."

On November 20, 2003, DiPetrillo filed a motion for a new trial, arguing that newly discovered evidence had come to light in the form of Jane's statement to a probation officer made in the course of preparing a presentence report. According to the probation officer, Jane had disclosed

that since the attack she had been seeing a therapist, was taking several prescription medications, was using alcohol and, on occasion, marijuana. DiPetrillo argued that evidence of Jane's alcohol and marijuana consumption was newly discovered and warranted a new trial.

In accordance with Rule 33 of the Superior Court Rules of Criminal Procedure,[2] the trial justice allowed testimony on the motion. He ruled that in a jury-waived case, a motion for a new trial actually was a motion to reopen the trial and he engaged in a colloquy with defense counsel about how to proceed. The trial justice offered to treat the motion for a new trial "any way you'd like." He suggested to counsel that he would "look at it in the context of a new trial motion, or in the context of revisiting the ultimate verdict[,] I think [it is] form over substance, isn't it?" Defense counsel responded, "I agree, Your Honor."

During the hearing, Jane testified that after the assault, there was a time in which she drank alcohol to get intoxicated, which she attributed to the stress of the upcoming trial and to school-related pressure. She took sleeping pills, as prescribed by her family physician, and admitted that on occasion she smoked marijuana. She also testified, however, that there was never a time when she did not remember specific, significant events in her life. The defendant argued that this evidence raised serious issues about Jane's memory and her credibility and requested that the court either enter a verdict of not guilty or grant a new trial.

The trial justice denied the motion for a new trial and reaffirmed his previous finding that the sexual encounter was "not

consensual[.]" As to the purported newly discovered evidence, the trial justice said that "[n]othing at all that was presented to the [c]ourt today in any way would disturb my finding as to the credibility of the witnesses in this case." In reaffirming the previous verdict, the trial justice again rejected the defense of consent:

"It's not as if [Jane] somehow lied, or embellished, or blocked out what occurred in that office. There is no dispute, in large part, about what happened in that office. The dispute really is whether or not any sex was consensual. I found then, and I certainly would reaffirm the finding now, that it was not consensual, again relying upon my earlier findings that I incorporate today."

Before this Court, defendant argues that the trial justice committed reversible error when he defined the elements of first-and second-degree sexual assault, as applied to the evidence adduced at trial, and when he denied defendant's motion for a new trial.

## Standard of Review

■■■ We long have held that our standard of review "of the findings of fact by a trial justice in a non-jury case is deferential. We shall not disturb such findings unless they are clearly wrong or unless the trial justice has overlooked or misconceived relevant and material evidence." *Barone v. Cotroneo*, 711 A.2d 648, 649 (R.I.1998) (mem.). However, it is equally well established that questions of statutory interpretation are reviewed *de novo*. *Webster v. Perrotta*, 774 A.2d 68, 75 (R.I.2001).

■■■ A motion for a new trial in a jury-waived criminal case is of "limited effectiveness" because it merely "affords a de-

**2.** Rule 33 of the Superior Court Rules of Criminal Procedure, entitled "New Trial" reads in pertinent part:

"If trial was by the court without a jury, the court on a motion of a defendant for a new trial may * * * take additional testimony * * *."

fendant an opportunity to convince the trial justice that he or she was wrong in his or her factual findings." *State v. Champagne*, 668 A.2d 311, 313 (R.I.1995). In *State v. Dunn*, 726 A.2d 1142, 1146 (R.I. 1999), we recognized that Rule 33 does not authorize a new trial after a jury-waived proceeding in which the trial justice functions as the fact-finder. Instead, a trial justice "may vacate the judgment * * * take additional testimony and direct the entry of a new judgment." *Id.* (quoting Rule 33). This is the precise route suggested by the trial justice in this case, to which defendant acquiesced.

■ When this Court reviews the denial of a Rule 33 motion in the context of a jury-waived trial, we apply the same deferential standard of review as would be applied to the Superior Court justice's factual findings on the merits. *Champagne*, 668 A.2d at 313. "Such determinations are entitled to great weight and will not be disturbed unless the trial justice has overlooked or misconceived relevant and material evidence or was otherwise clearly wrong." *Id.* (citing *State v. Howard*, 114 R.I. 731, 738, 339 A.2d 259, 263 (1975)).

## Analysis

■ The defendant asserts that when the trial justice defined the elements of first-and second-degree sexual assault, he interpreted the element of "force or coercion"[3] as found in G.L.1956 § 11–37–2 first-degree sexual assault[4] and § 11–37–4 second-degree sexual assault,[5] by reference to improper or inapplicable standards. Specifically, DiPetrillo argues that the trial justice "conflated the 'force or coercion' standard" adopted by the General Assembly with other theories, such as: "the non-consent standard; the psychological-coercion-of-susceptible-victim standard; and the disagreeable sexual encounter standard."

However, at no point in the proceedings did defendant challenge the sufficiency of the evidence presented by the state or the factual findings by the trial justice. Clearly, at the close of the evidence defendant could have moved, pursuant to Rule 29(b) of the Superior Court Rules of Criminal Procedure to dismiss the indictment.[6] We

3. General Laws 1956 § 11–37–1 states in pertinent part:

"The following words and phrases, when used in this chapter, have the following meanings:
" * * *
"(2) 'Force or coercion' means when the accused does any of the following:
"(i) Uses or threatens to use a weapon, or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a weapon.
"(ii) Overcomes the victim through the application of physical force or physical violence.
"(iii) Coerces the victim to submit by threatening to use force or violence on the victim and the victim reasonably believes that the accused has the present ability to execute these threats."

4. Section 11–37–2 provides in pertinent part:

"A person is guilty of first degree sexual assault if he or she engages in sexual penetration with another person, and if any of the following circumstances exist:
" * * *
"(2) *The accused uses force or coercion.*"
(Emphasis added.)

5. Section 11–37–4 provides in pertinent part:

"A person is guilty of a second degree sexual assault if he or she engages in sexual contact with another person and if any of the following circumstances exist:
" * * *
"(2) *The accused uses force or coercion.*"
(Emphasis added.)

6. Rule 29(b) of the Superior Court Rules of Criminal Procedure states:

"(b) *Motion* to dismiss. In a case tried without a jury, a motion to dismiss may be filed at the close of the state's case to chal-

have previously held that in a jury-waived criminal proceeding such as this case:

"[A] defendant may move to dismiss in order to challenge the legal sufficiency of the evidence. * * * In ruling on such a motion, the trial justice acts as the fact-finder. * * * In carrying out that task, the trial justice is 'required to weigh and evaluate the trial evidence, pass upon the credibility of the trial witnesses, and engage in the inferential process, impartially, not being required to view the inferences in favor of the nonmoving party, and against the moving party.'" *State v. Harris,* 871 A.2d 341, 346 (R.I.2005).

We reiterate, however, that defendant failed to challenge the sufficiency of the evidence adduced at trial.

In his brief to this Court, defendant makes much of the fact that the trial justice repeatedly referred to the sexual encounter between DiPetrillo and Jane as being nonconsensual and defendant attempts to attach error to these references by arguing that "non-consent is not 'force or coercion' under § 11–37–1(2)." This argument is without merit. DiPetrillo himself raised the defense of consent; in so doing he shifted the burden of proof to the state to establish, beyond a reasonable doubt, that the encounter was in fact nonconsensual. *See State v. Brigham,* 638

A.2d 1043, 1046 (R.I.1994). Because proof that the encounter was nonconsensual depended entirely on the competing credibility of the complaining witness and defendant, it was mandatory for the trial justice to make credibility findings about the nonconsensual nature of the encounter.

■ Furthermore, in jury-waived criminal cases, the accused may request that the court make special findings of fact or special rulings on questions of law in accordance with G.L.1956 § 12–17–3 [7] and Rule 23(c). "As applied to criminal trials without a jury, Rule 23(c) provides: * * * '[that] the court shall make a general finding and shall in addition on request find the facts specially.'" *Cesario v. United States,* 200 F.2d 232, 233 (1st Cir.1952) (quoting Fed.R.Crim.P. 23(c)).[8] Rule 23(c) sets forth "the proper procedure by which * * * [to] preserve a question of law for purposes of appeal." *Cesario,* 200 F.2d at 233. Indeed, "[s]pecial findings are to a bench trial as instructions are to a trial before members [of the jury]. Such procedure is designed to preserve for appeal questions of law. * * * It is the remedy designed to rectify judicial misconceptions regarding * * * the appropriate legal standard[.]" *United States v. Falin,* 43 C.M.R. 702, 704, 1971 WL 12862 (U.S. Army Ct. of Military Rev. 1971).[9] The record indicates that defendant made no

---

lenge the legal sufficiency of the state's trial evidence."

7. General Laws 1956 § 12–17–3 entitled "Waiver of jury trial—Special findings and rulings" states:

"In all criminal cases the accused may, if he or she shall so elect and with the leave of the court, waive a trial by jury, and in those cases the court shall have jurisdiction to hear and try the cause without a jury and render judgment and pass sentence. In cases so tried the court shall, upon request of the accused, make special finding upon any issue of fact and special ruling upon any question of law arising in the case."

8. *See also People v. Scott,* 34 Cal.App.3d 702, 708, 110 Cal.Rptr. 402 (Cal.Ct.App.1973) (citing *Cesario v. United States,* 200 F.2d 232, 233 (1st Cir.1952) for the proposition that requesting special findings under Fed.R.Crim.P. 23(c) is the proper way to preserve a question of law for appeal).

9. *Cf. People v. Prado,* 4 N.Y.3d 725, 790 N.Y.S.2d 418, 823 N.E.2d 824, 824 (2004) (mem.) (holding that the defendant's claim on appeal of judicial bias in bench trial was unpreserved for appellate review).

such request. We also note that Rule 33, pertaining to motions for a new trial, was amended in 2002, to permit the grant of a new trial for errors of law committed at trial. *See* Rule 23 Committee Notes for 2002 Amendment (stating that "[t]here are two changes to Rule 33[,][t]he first permits the court to order a new trial for error of law committed at trial"). Although defendant filed a motion for a new trial, he failed to challenge any errors of law that the trial justice allegedly made when he applied the sexual assault statutes to the evidence in the case. Rather, defendant's motion for a new trial was based solely on newly discovered evidence pertinent to Jane's credibility. Significantly, at the December 16, 2003 hearing on the defendant's motion for a new trial, DiPetrillo neither raised nor argued any alleged errors of law.

■ However, to ignore the record in this case would be to exalt form over substance. The purpose of special findings "is to afford a reviewing court a clear understanding of the basis of the trial court's decision" by creating a record adequate for appellate review. *United States v. Hogue*, 132 F.3d 1087, 1090 (5th Cir.1998).[10] " 'The ultimate test as to the adequacy of findings will always be whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision.' " *United States v. Johnson*, 496 F.2d 1131, 1138 n. 7 (5th Cir.1974). In this case, the trial justice did not limit his decision to a general finding of guilt. Rather, he issued a comprehensive decision and adequately spread upon the record his findings of fact and rulings of law

with sufficient specificity to permit appellate review of this issue. Courts have recognized that Rule 23(c) permits a trial justice to enter findings of fact and conclusions of law *sua sponte*.[11] These "[f]indings may be sufficient if they permit a clear understanding of the basis of decision of the trial court, irrespective of their mere form or arrangement." *Featherstone v. Barash*, 345 F.2d 246, 250 (10th Cir.1965).

After careful review of the record in this case, we are satisfied that the trial justice made comprehensive findings of fact and rulings of law such that this Court, although mindful of the constraints placed upon us by defendant's failure to have challenged the sufficiency of the evidence, can review those findings to determine the basis of the trial justice's decision and whether findings relative to the element of force and coercion, based on two distinct grounds—coercion by implied threat, and physical force and coercion—are sufficiently independent of each other or are so interrelated that our decision vacating one finding gives rise to uncertainty about the independent reliability of the other. *See Hogue*, 132 F.3d at 1090–91 (holding that the trial court's oral findings were susceptible to more than one interpretation and gave rise to doubt about whether the trier of fact found every element of the crime charged beyond a reasonable doubt; case was remanded to the trial court to make findings of fact supporting its conclusions).

**Force or Coercion**

Based on the issues raised in this appeal, our function is to satisfy ourselves

---

**10.** *See also United States v. Johnson*, 496 F.2d 1131, 1138 n. 7 (5th Cir.1974) (stating that the underlying purpose of a trial court's findings of fact is "to afford the appellate court a clear understanding of the basis of the trial court's decision").

**11.** *See, e.g., United States v. Snow*, 484 F.2d 811, 811 n. 2 (D.C.Cir.1973) (stating that Rule 23 "requires findings of fact 'on request.' In this case, where the trial judge recognized the need for findings and directed that they be prepared, it was unnecessary for counsel to make a request.")

that defendant was properly found guilty beyond a reasonable doubt. In his decision, the trial justice found that the element of force or coercion was satisfied in two distinct ways:

> "Generally speaking, force or coercion means overcoming the victim of sexual assault through the application of physical force or violence, against her will, and without her consent. It also includes compelling the victim to submit by threatening to use force or violence, and the victim reasonably believed that the defendant had the present ability to carry out such threats. * * * [A] threat may be implied as well as express. * * * Force or coercion may also consist of the imposition of psychological pressure upon a person who, under all of the circumstances, is vulnerable and susceptible to such pressure."

We shall address the issues of implied threats under § 11–37–1(2)(iii), physical force under § 11–37–1(2)(ii), and the motion for new trial based on newly discovered evidence *seriatim.*

### Implied Threats Under § 11–37–1(2)(iii)

■ The trial justice found that "all of the ingredients were present on the evening of March 20th for the defendant to overbear the will of [Jane], either by the very authority that he represented, or by a modicum of physical force." He continued, "[a]s it turned out, and as I so find from the credible evidence before me, both of those circumstances occurred." DiPetrillo now argues that the trial justice erred in applying a "psychological-coercion-of-a-vulnerable-victim analysis" as delineated by this Court in *State v. Burke,* 522 A.2d 725

(R.I.1987), and subsequently limited in *State v. Jacques,* 536 A.2d 535 (R.I.1988).

In *Burke,* the defendant, a uniformed and armed police officer, was convicted of two counts of first-degree sexual assault upon an alcoholic victim whom he had picked up in his police cruiser while she was hitchhiking. 522 A.2d at 728. Although the defendant in *Burke* never orally threatened the victim with violence if she did not submit to his command to perform oral sex upon him, we nonetheless agreed that the defendant coerced the victim to submit "by threatening to use force or violence on [her] and [that] the victim reasonably believe[d] that the accused ha[d] the present ability to execute those threats." [12] *Id.* at 736.

This Court in *Burke* held that an implied threat can be as effective as a declared threat under § 11–37–1 and that "[a] threat may consist of the imposition of psychological pressure on one who, under the circumstances, is vulnerable and susceptible to such pressure." *Burke,* 522 A.2d at 735. However, we also noted that the factual situation in *Burke* was unusual in that "the sexual assault crime involve[d] a person in a position of authority who is armed, speaks in terms of peremptory command," *id.,* and "that the victim did not consent to the sexual activity and reasonably believed that resistance would be useless." *Id.* at 736.

In *Jacques,* the defendant posed as a photographer and took a Rhode Island School of Design student unwillingly to a secluded studio. 536 A.2d at 536. Although the defendant did not overtly threaten the victim with words, under the pretense of examining her for scars or blemishes for photographic purposes, he

---

**12.** At the time of *State v. Burke,* 522 A.2d 725 (R.I.1987), this definition of "Force or coercion" was found at § 11–37–1(C). Although the statute was subsequently amended so that this portion of the definition is now found at § 11–37–1(2)(iii), the language remains exactly the same.

got her to undress and then attempted to insert his penis into her vagina. *Id.* He succeeded in digitally penetrating her vagina with two of his fingers. *Id.* at 536–37.

Based on the facts in *Jacques,* this Court declined "to extend the *Burke* analysis of implied threats to the facts in this case." 536 A.2d at 538. DiPetrillo now argues that a similar limitation on the *Burke* analysis of psychological-pressure-on-a-vulnerable-victim should apply to the facts in his case and that the trial justice erred by applying the *Burke* implied threat analysis outside of the context of *Burke.* We agree. To the extent that the trial justice's verdict was based on a finding of an implied threat that constituted the force or coercion necessary for guilt beyond a reasonable doubt under §§ 11–37–2 and 11–37–4, we deem it error. As we held in *Jacques,* we are not willing to extend the *Burke* analysis of implied threats to the facts in this case, in which the implied threat arose solely in the context of an employment relationship.

In our decision in *Jacques,* however, we nonetheless affirmed the defendant's conviction, basing our decision on the jury's finding of force or coercion by overcoming the victim "through the application of physical force or violence." *Jacques,* 536 A.2d at 538, 539. We rejected *Jacques's* argument that "bodily harm or great physical resistance must be exhibited by the victim before the requirement of force or violence is satisfied." *Id.* at 538. In evaluating the sufficiency of the evidence in *Jacques,* we "focus[ed] our concern on what [the *defendant* ] did or did not do, not

on how [the victim] should have responded." [13] *Id.* (Emphasis added.)

Significantly, we declared that under this state's sexual assault statutes, "every male and female has an interest in bodily integrity. That integrity is violated regardless of the type or length of time of the penetration." *Jacques,* 536 A.2d at 538.

### Physical Force Under § 11–37–1(2)(ii)

In the case at bar, after careful review of the record, we are of the opinion that the trial justice properly articulated the standard for *physical* force or coercion as defined by § 11–37–1(2)(ii), which provides that force or coercion arises when the defendant "[o]vercomes the victim through the application of physical force or physical violence." However, in his decision, the trial justice found:

"I credit [Jane's] testimony that, apart from a single kiss at the outset, she did not want the defendant to continue his advances. She said that the defendant grabbed her wrist and brought her to his lap, that he continued to try to kiss her, and that she told him not to, that she moved her head in an effort to avoid his efforts to kiss her mouth, and that she kept telling him it was wrong * * * She pushed at his chest and tried, to no avail, to push away from his grasp around her waist while he masturbated. Indeed, at one point she described how the defendant hovered over her as she sat trapped and fearful in his chair, with both of his hands on each arm of the chair. I find from the credible evidence that all of the relevant hallmarks of force or coercion that I outlined earlier,

13. In *State v. Jacques,* 536 A.2d 535, 538 (R.I.1988), the complaining witness was "forced into a position of helplessness." While in this position:

"Jacques moved to the attack. He attempted to insert his penis into her vagina several times. * * * After several failed attempts at penile penetration, because of Kathy's resistance, but before Kathy was able to assume a position whereby she could defend herself, Jacques thrust two of his fingers into her vagina." *Id.*

both physical as well as psychological, *were part and parcel of the defendant's misconduct.*" (Emphasis added.)

First, defendant argues that the trial justice's finding that he exerted physical force to overcome Jane was secondary to the finding about implied threats; he further argues that what was found was only "a *modicum* of physical force," which, he contends, is a misapplication of critical tenets of Rhode Island law. The defendant then argues that what the trial justice characterized as a "modicum" of force falls short of the physical force necessary under § 11–37–1(2)(ii), asserting that it was no "more than that required to accomplish the sexual act" nor did it "precede the alleged illegal activity[,]" the latter assertion being an apparent reference to the testimony that defendant forcibly held Jane while he masturbated.

After scrupulously reviewing the record before us, we are of the opinion that notwithstanding the trial justice's proper articulation of physical force as set forth in § 11–37–1(2)(ii), we are not convinced that the trial justice's finding of guilt based on physical force was not so inextricably intertwined with the erroneous finding of force and coercion by implied threats that it can constitute a separate and independent finding of guilt beyond a reasonable doubt.

The trial justice's finding that "all of the ingredients were present" in order "for the defendant to overbear the will" of this victim, "either by the very authority that he represented, or by a modicum of physical force" and his conclusion that all of the "relevant hallmarks of force or coercion * * * both physical as well as psychological, were *part and parcel* of the defendant's misconduct," gives us pause. (Emphasis added.) Viewed in its entirety, and in light of the erroneous finding of force and coercion by implied threats, we are

left with uncertainty about whether defendant was convicted based on a finding of force and coercion by *physical force* beyond a reasonable doubt that was separate and apart from this error.

We therefore vacate the judgment and remand this case to the trial justice with directions to conduct an independent examination of the evidence adduced at trial, to make findings, and to determine whether the state has established, beyond a reasonable doubt, that defendant is guilty of the crimes charged in the indictment, based solely on physical force as set forth in § 11–37–1(2)(ii). We deem this procedure the appropriate remedy in the context of a jury-waived case.

■ In a jury-waived trial, a trial justice is vested with broad discretion to hear evidence, pass on the merits of a claim, reopen the proceeding or make additional findings of fact based on the state of the record. *See Connecticut Valley Homes of East Lyme, Inc. v. Bardsley*, 867 A.2d 788, 795 (R.I.2005) (holding that, after a trial justice sitting without a jury allowed additional evidence on defendant's affirmative defense, but refused to allow the affirmative defense based on a perceived irregularity, the judgment was vacated and the case was remanded for a new judgment rendered in light of the affirmative defense).

The defendant urges this Court to grant him a new trial based on his contention that the trial justice applied incorrect legal standards to the evidence in a non-jury case. This argument is without merit. This is a jury-waived criminal trial in which the fact-finding function has been entrusted to an experienced and respected trial justice. *See State v. Notarantonio*, 622 A.2d 457, 458, 459 (R.I.1993) (holding that, in a jury-waived trial, the trial justice is the arbiter of both the law and the facts,

and is presumed capable of "rendering a fair and impartial decision" not swayed by evidence "later determined to be inadmissible" and who can "separate the evidentiary wheat from the chaff"). The suggestion that this case cannot be revisited by the same trial justice is simply untenable and not borne out by our jurisprudence.

Furthermore, a remand for additional findings by the trial justice, guided by our decision herein, is the appropriate and accepted remedy in a jury-waived case. *See, e.g., Hogue*, 132 F.3d at 1091 (holding that the trial court's findings in a jury-waived case were inadequate, susceptible to more than one interpretation, and created doubt about whether the defendants were convicted without a finding on every essential element of the offense, and vacating the judgment and remanding it to the trial judge for additional findings of fact); *United States v. Brown*, 716 F.2d 457, 462 (7th Cir.1983) (holding that the court was not satisfied on the state of the record before it that the defendant had been found guilty beyond a reasonable doubt, and vacating the judgment and remanding the case to the trial judge for specific findings *"based solely on the record created at defendant's trial"*) (emphasis added); *Rivera v. Harris*, 643 F.2d 86, 97 (2d Cir.1981) (after facially inconsistent verdicts were rendered in a multi-defendant state court bench trial, the appellate court reversed and remanded to the district court "with directions to enter an order conditionally vacating petitioner's conviction and awarding him a new trial unless the state trial court demonstrates by appropriate findings rendered within ninety days that petitioner's conviction is valid"); *United States v. Livingston*, 459 F.2d 797, 798 (3d Cir.1972) (upon finding that trial court erred in conditioning a waiver of a jury trial on defendant's relinquishing his right to specific findings of fact by the trial judge, the conviction was vacated and the case remanded to the trial judge to make findings in accordance with Rule 23(c) of the Federal Rules of Criminal Procedure).[14]

Accordingly, we vacate the judgment and remand this case to the trial justice for the limited purpose of conducting an independent examination of the trial record to determine whether the evidence supports a finding of guilt beyond a reasonable doubt, based solely on the element of physical force as defined by § 11–37–1(2)(ii). In the absence of such a finding, the indictment shall be dismissed.

### Motion for a New Trial Based on Newly Discovered Evidence

▮▮▮ The defendant also contends that the trial justice erred when he denied defendant's motion for a new trial. He argues that the newly discovered evidence pertaining to Jane's post-assault alcohol and marijuana consumption goes not to her credibility, but rather to the heart of her reliability as a witness. According to defendant, "[t]he trial judge did not even consider the impact of the new material on the complaining witness's reliability." He

---

**14.** We note that in his reply brief to this Court, defendant cites to *United States v. Hogue*, 132 F.3d 1087 (5th Cir.1998); *United States v. Brown*, 716 F.2d 457 (7th Cir.1983); *Rivera v. Harris*, 643 F.2d 86 (2d Cir.1981); and *United States v. Livingston*, 459 F.2d 797 (3d Cir.1972) in support of his contention that we should undertake review of the trial justice's findings in this case, notwithstanding defendant's failure to request Rule 23(c) findings and his failure to seek a new trial based on errors of law. However, in each of those cases, the judgment was vacated and the case was remanded *to the trial judge* for additional findings and *not a new trial. See* discussion *infra* physical force under § 11–37–1(2)(ii). Indeed, defendant has failed to point to any reported *criminal* case in which a new trial was ordered after a jury-waived trial.

argues that this new information was not properly considered by the trial justice, who, he asserts, used a subjective, rather than the proper objective, standard; he contends that "the trial judge looked only to whether the new evidence had changed *his* mind, not whether a reasonable finder of fact would likely have come to a different conclusion had the evidence been presented at trial." He asserts that on this issue, the trial justice erred as a matter of law, overlooked and misconceived material evidence, and was clearly wrong.

The defendant based his motion for a new trial on newly discovered evidence that first came to light during the post-verdict preparation of the presentence report by Christopher Frenier (Frenier) of the Rhode Island Department of Probation. In keeping with the practice of preparing these reports, Frenier interviewed Jane and solicited her statement about the impact of the criminal offenses on her life.

According to Frenier, Jane disclosed that after the assault she began to consume greater amounts of alcohol and marijuana, that she was using prescription medications, and had been seeing a therapist. DiPetrillo argued that these disclosures warranted a new trial. He contended that records of Jane's counseling sessions, if available at trial, could have been used on cross-examination "and potentially could have contained exculpatory evidence." Additionally, defendant said that Jane's use of alcohol and marijuana "could clearly have [a]ffected her ability to recall the events of March 20, 2002, in a clear manner." [15] Both Jane and Frenier testified at the evidentiary hearing. The defendant argued that

Jane's disclosures warranted a verdict of not guilty or, in the alternative, a new trial. The state countered that the proffered testimony did not rise to the level of newly discovered evidence and argued against reopening the case.

The trial justice reaffirmed DiPetrillo's convictions and reincorporated all of his prior findings into his decision, as well as addressing defendant's credibility arguments. He found that Jane was "unable to avoid [what happened] because the defendant overcame her will by force and coercion." He declared that "[n]othing at all that was presented to the [c]ourt today in any way would disturb my finding as to the credibility of the witnesses in this case." Again, the trial justice addressed defendant's claim that the sexual encounter was consensual. He rejected this contention and declared that "[t]he defendant remains wholly incredible and a guilty defendant. The verdict is reaffirmed to the extent the record needs to indicate so."

■ In a criminal case, a motion for a new trial based on newly discovered evidence should not be granted unless the evidence produced to support the motion satisfies a two-part, multifaceted test. *See State v. Firth*, 708 A.2d 526, 532 (R.I.1998). In *Firth*, we explained that test as:

"The first prong is a four-part inquiry that requires that the evidence be (1) newly discovered since trial, (2) not discoverable prior to trial with the exercise of due diligence, (3) not merely cumulative or impeaching but rather material to the issue upon which it is admissible, (4) of the type which would probably change the verdict at trial. * * * Once this first prong is satisfied, the second

---

**15.** The defendant also asserted that if the state knew of this information and failed to disclose it, it would constitute a violation of the state's obligation to alert defendant of exculpatory evidence as required by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). However, defendant conceded that the state had not been aware of this evidence at the time of trial.

prong calls for the hearing justice to determine if the evidence presented is 'credible enough to warrant a new trial.'" *Id.* (quoting *State v. Gomes,* 690 A.2d 310, 321 (R.I.1997)).

On appeal, DiPetrillo strenuously argues that the critical issue to which the newly discovered evidence applied was Jane's reliability as a complaining witness, rather than her credibility, and that the trial justice "misconceive[d] the probative thrust" of this evidence by focusing on the credibility of the witnesses. The defendant argues that reliability goes to the question of "whether the court could have confidence that the complaining witness's testimony established the requirements of 'force or coercion' under Rhode Island law," he implies that the newly discovered evidence indicates Jane might have experienced memory loss that may have affected the accuracy of her testimony and thus, its reliability. In contrast, defendant argued to the trial justice that the newly discovered evidence presented "serious issues [and] questions about [Jane's] credibility." Significantly, the trial justice found that "[n]othing at all that was presented to the [c]ourt today in any way would disturb my finding as to the credibility of the witnesses in this case."

As noted earlier, DiPetrillo himself raised the defense of consent, placing the burden of negating this defense upon the state. *See Brigham,* 638 A.2d at 1046. Because evidence of consent, or lack of consent, depends entirely on the witnesses' credibility, when he denied the motion for a new trial, the trial justice quite properly reincorporated his earlier findings on Jane's credibility and DiPetrillo's lack of credibility.

In those findings, the trial justice addressed certain criteria that affect a witness's credibility and reliability, such as looking for "inconsistencies," "discrepan-

cies," and whether a witness "misrecollected or exaggerated;" indeed, he even used the word "reliable."

Because the trial was jury-waived, this same trial justice assessed the probative value of the testimony proffered at the original trial as well as at the later hearing. By reincorporating all of his findings from the original decision, he reaffirmed the reliability of Jane's testimony.

This Court has not separated the concepts of credibility and reliability as defendant now argues. Specifically, we have held that "[c]redibility * * * does not simply refer to veracity. Rather, credibility is more properly understood as 'that quality in a witness which renders his [or her] evidence worthy of belief.'" *State v. Luanglath,* 749 A.2d 1, 5 (R.I.2000) (quoting Black's Law Dictionary 366 (6th ed.1990)); *see also Valente v. H.P. Hood & Sons, Inc.,* 108 R.I. 558, 562, 277 A.2d 505, 507 (1971) (noting that in determining witness credibility, the fact-finder is allowed to consider the question of reliability). In *Luanglath,* we held that when ruling on a new trial motion, "[t]he trial justice must also determine to what extent reliability *affects* the witnesses' credibility and what weight should be given to their testimony." *Luanglath,* 749 A.2d at 6 (emphasis added). It is our opinion that in this instance, the trial justice appropriately made that analysis.

Finally, the trial justice made clear that the evidence offered was not the type of evidence likely to change the verdict. *See Firth,* 708 A.2d at 532 (holding that to warrant a new trial, newly discovered evidence must be credible). We are satisfied that the reasons the trial justice articulated are sufficient to uphold his decision to deny the defendant's motion for a new trial and to reaffirm his earlier decision. We accord deference to the trial justice's ruling and hold that he was not clearly wrong

nor did he overlook or misconceive material evidence and, additionally, that he properly denied the motion for a new trial.

## Conclusion

For the foregoing reasons, we affirm the judgment in part and vacate it in part. We affirm the denial of the defendant's motion for a new trial based on newly discovered evidence. However, we vacate the judgment of conviction and remand this case to the Superior Court with directions to enter a new judgment in accordance with this decision. The papers in this case may be remanded to the Superior Court.

Justice ROBINSON, concurring.

I concur in the opinion of the majority, except for its holding concerning the motion for a new trial based on newly discovered evidence. On that issue, I express no view.

Justice FLAHERTY, dissenting.

I respectfully dissent from the holding of the majority. Although I agree that the majority is correct in vacating the judgment of the trial court, I disagree that the proper remedy for the trial justice's application of the incorrect legal standard for implied threats is to remand for further findings on the alternative theory of physical force. When, as is the case here, a trial justice in a jury-waived case adequately lays out the factual basis for his decision in findings of fact sufficient to satisfy the requirements of Rule 23(c) of the Superior Court Rules of Criminal Procedure, and that factual basis fails to establish that an element of the crime charged was proven beyond a reasonable doubt, the appropriate remedy is a judgment of acquittal.

The majority concludes that the trial justice made two separate findings of fact—one based on an erroneous interpretation of the scope of our implied-threats doctrine, and a second based on a correct application of the standard for physical force—but that uncertainty abounds with regard to which ground the justice relied upon when he adjudged the defendant guilty. Therefore, the majority reasons, because the justice's application of the psychological coercion standard constituted an error of law, a remand for further findings is necessary to ascertain whether there is enough evidence of physical force in the record to satisfy the justice that the element of force or coercion was proved beyond a reasonable doubt on that basis. I cannot agree.

In my opinion, the only fair reading of the trial justice's decision is that he found that the complaining witness (Jane) was overborne by a *combination* of psychological pressure arising from DiPetrillo's authority over her as an employee and the application of some minimal physical force. It is critical to me that at no point did the trial justice find that defendant overcame the complaining witness by means of physical force.

In his decision, the trial justice says:

"all of the ingredients were present on the evening of March 20th for the defendant to overbear the will of this diminutive and attractive young girl, either by the very authority that he represented, or by a *modicum* of physical force. As it turned out, and as I so find from the credible evidence before me, *both* of those circumstances occurred." (Emphases added.)

And, later he explains: "all of the relevant hallmarks of force or coercion that I outlined earlier, *both physical and psychological, were part and parcel of the defendant's misconduct.*" (Emphasis added.)

Even under the most liberal reading, I find it difficult to extrude from this language the majority's conclusion that the trial justice made two separate findings—one based on implied threats, and one based on physical force—either of which could have formed the factual basis for his ultimate finding of guilt beyond a reasonable doubt. Although I would agree that the trial justice clearly found that physical force was "part and parcel" of defendant's misconduct, he also found that the evidence of physical force in the record amounted to only a "modicum," and that Jane was ultimately overcome by the *entirety* of the misconduct and not by either of the individual elements that comprised it. It is clear to me that there was no finding that the amount of physical force present in the record—*i.e.* a modicum [16]—could have, by itself, overcome the complaining witness.[17]

"The Due Process Clause of the Fourteenth Amendment to the United States Constitution and article 1, section 2, of the Rhode Island Constitution deny the state the power to deprive the accused of liberty unless the state proves every element necessary to constitute the crime charged beyond a reasonable doubt." *State v. Hazard,* 745 A.2d 748, 751 (R.I.2000); *see also In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) ("[W]e explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."); *Leland v. Oregon,* 343 U.S. 790, 794, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952) ("[T]he prosecution was required to prove beyond a reasonable doubt every element of the crime charged * * *."); *State v. Davis,* 877 A.2d 642, 648 (R.I.2005) ("The state bears the burden of proving 'every element necessary to constitute the crime charged beyond a reasonable doubt.'" (quoting *Hazard,* 745 A.2d at 751)); *State v. DelBonis,* 862 A.2d 760, 765 (R.I.2004) ("The state bears the burden of proving each and every element necessary to the charge of driving under the influence of alcohol in violation of [G.L.1956] § 31-27-2 beyond a reasonable doubt."); *State v. Caron,* 423 A.2d 823, 827 (R.I. 1980) (holding that a jury instruction was erroneous because it could have misled the jury to believe that the burden of proof had shifted to the defendant in violation of his due process rights). The majority correctly holds that the psychological pressure cited by the trial justice was insufficient to satisfy the element of force or coercion under the statute.[18] But, it also is

---

**16.** The dictionary definition of the word *modicum* is "a moderate or small amount." Random House Unabridged Dictionary 1236 (2d ed.1993).

**17.** This is not to say that I would in any way depart from what this Court has said about resistance in sexual assault cases. *See, e.g., State v. Goodreau,* 560 A.2d 318, 322 (R.I. 1989) ("The victim need not incur bodily harm or exhibit great physical resistance."); *State v. Carvalho,* 122 R.I. 461, 467, 409 A.2d 132, 135–36 (1979) ("Today the law does not expect a woman, as part of her proof of opposition or lack of consent, to engage in heroics when such behavior could be useless, fruitless, or foolhardy. * * * All that is required is that the woman offer such resistance as seems reasonable under all the circumstances."); *see also State v. Howard,* 114 R.I. 731, 736–37, 339 A.2d 259, 262 (1975) ("The degree of resistance which will exclude the conclusion or inference that the female gave her consent is only that resistance to the force of the defendant as seems reasonable to offer under the circumstances * * *.").

**18.** Our initial foray into this area was in *State v. Burke,* 522 A.2d 725 (R.I.1987). There, we affirmed the conviction of a uniformed police officer who had picked up a vulnerable hitchhiker, who was known to him, in his patrol car and subsequently demanded that she perform certain sex acts on him. Even though there was no evidence of actual or threatened force or violence in the record, we nonethe-

readily apparent that, putting those psychological considerations aside, there is no finding that Jane was overcome by physical force. Therefore, the state failed to prove, and the trial justice did not find, that the element of force or coercion was satisfied beyond a reasonable doubt. As a result, I find it inappropriate to send this case back to the same trial justice to review the record for the existence of additional evidence of physical force when he has, in my opinion, already found that the amount of force required by the statute was not present.

Further, the federal precedent cited by the majority to support its contention that the correct remedy in a jury-waived case is

a remand for further findings is clearly distinguishable from the case at bar. In those cases, the issues on appeal were inextricably linked to the trial justices' failure to fulfill their obligation to make adequate findings under Rule 23(c) of the Federal Rules of Criminal Procedure. In other words, those cases involved either nonexistent or wholly inadequate findings by a trial justice sitting without a jury. When such a deficiency leaves the appellate court unable to discern the basis for the trial court's decision, meaningful review is rendered almost impossible, and logic dictates that a remand for more detailed findings may be manifest.[19]

less affirmed the conviction, reasoning that when a uniformed, armed police officer commands that a docile, intimidated victim submit to sexual abuse the threat, although implied, is nevertheless clear: submit or be physically forced to do so.

However, in *State v. Jacques*, 536 A.2d 535 (R.I.1988), we could not have been more direct in limiting *Burke* to its unique facts with respect to the psychological coercion of a vulnerable victim. Despite our unwillingness to extend the holding in *Burke* to the facts presented in *Jacques*, we affirmed the conviction in that case because the record contained physical violence that overcame the victim's resistance, including her being pushed into a chair, her tensing her body to avoid being penetrated, and her crying and screaming.

Here, even though defendant was the employer of the complainant and he was physically imposing as compared to her, he was neither a police officer, nor was he armed. Thus, while defendant's status as her boss may very well have given the complainant good reason for concern that resistance to defendant's inappropriate conduct might result in some adverse work related consequence, that is not enough to constitute an implied threat of force or violence under G.L. 1956 §§ 11–37–2 and 11–37–4. Indeed, as we said in *Burke*, 522 A.2d at 735, "[w]e are mindful of the fact that an alleged victim's consent to a request to engage in sexual activity is not always the product of coercion when the person who requests sexual favors is in a position of authority over the alleged victim."

Similarly, the fact that defendant was larger and older than the complainant, does not justify a finding, by those facts alone, that there was an implied threat of force or violence. It was, therefore, clear legal error for the trial justice to apply the *Burke* standard of implied threats of force or violence to the facts of this case.

19. It is also worth noting that, contrary to the contention of the majority, the federal case law is equivocal with respect to whether the appropriate remedy when a trial justice does not fulfill his obligation to render adequate findings in a jury-waived case under the applicable rules of criminal procedure is a new trial or a remand for further findings. And, although the majority is quick to point out defendant's "fail[ure] to point to any reported *criminal* case in which a new trial was ordered after a jury-waived trial[,]" this does not mean that those cases do not exist. *See, e.g., Howard v. United States*, 423 F.2d 1102 (9th Cir.1970); *Haywood v. United States*, 393 F.2d 780 (5th Cir.1968); *United States v. Morris*, 263 F.2d 594 (7th Cir.1959).

Indeed, the case law seems to indicate that when an appellate court is required to review the decision of a trial justice in a jury-waived case in which the trial justice either failed to render findings after a timely request and/or rendered wholly inadequate findings under Rule 23(c), the appellate court may *choose* between either ordering a new trial or remanding for further findings. Although the case law is unclear about the precise factors

 

By contrast, the trial justice's findings of fact in this case adequately set forth those facts that he believed proved the defendant's guilt beyond a reasonable doubt.[20] As the majority correctly concludes, however, many of those facts found by the trial justice—namely, those concerning psychological pressure—should not have been relied upon and cannot be considered when determining of whether the state had met its burden of proving guilt beyond a reasonable doubt. Thus, unlike the cases cited by the majority, the trial justice's error in this case had nothing to do with the adequacy of his findings because those findings were both extensive and inclusive.

There is little doubt that the record would support a conclusion that Craig DiPetrillo's actions on the night in question were boorish to the extreme, and that he may be a cad and a louse. But because the state failed to prove that all the elements of the crimes charged were satisfied beyond a reasonable doubt, I would vacate his conviction and order the entry of a judgment of acquittal.

---

appellate courts should employ in making this choice, *compare Morris*, 263 F.2d at 596 ("[W]e have concluded that in this case the substantial rights of *all* parties will be best served by a new trial.") *with United States v. Livingston*, 459 F.2d 797, 798 (3rd Cir.1972) ("We have reviewed the record and find that credibility issues are not of such pervasiveness as to require a new trial.") *and Rivera v. Harris*, 643 F.2d 86, 97 (2nd Cir.1981) ("We conclude that [a remand for findings] is appropriate in this case, primarily because the verdicts, though facially inconsistent, may yet be susceptible to a rational explanation."), the case law hardly indicates that either is the more "appropriate and accepted remedy," as the majority suggests. The proper choice appears to hinge solely on the particular facts of each case.

Further, this Court has in the past applied the remedy of a new trial instead of a remand for further findings in a nonjury case. In *In re Doe*, 120 R.I. 732, 390 A.2d 920 (1978), a nonjury case involving a delinquency petition brought against a juvenile, this Court overturned a Family Court justice's determination of delinquency after concluding that the justice's findings were ambiguous with respect to whether he improperly shifted the burden of persuasion to the defendant on his self-defense claim. Significantly, in that case, this Court chose to remand the case for a new trial rather than for further findings on the issue. (Although the opinion does not explicitly state that a new trial was ordered, the case was "remanded to the Family Court," *In re Doe*, 120 R.I. at 743, 390 A.2d at 926, and there is no indication in the opinion that further findings were required.) That the case stemmed from a delinquency petition and not an adult criminal proceeding is a distinction without a difference for the purposes of this analysis.

20. Indeed, the majority concedes this point, stating: "we are satisfied that the trial justice made comprehensive findings of fact and rulings of law such that this Court * * * can review those findings to determine the basis of the trial justice's decision * * *."